WILTSHIRE, et al. *v.* GLENN.

No. 39357          November 22, 1954          75 So. 2d 749

354

*J. W. Conger,* Winona, for appellants.

*Robertson Horton,* Winona, for appellee.

McGehee, C. J.

This is a replevin suit, and as is usual in such cases the procedure and proof is in a state of much confusion.

The judgment appealed from awarded the property, consisting of four cows and calves, to the defendant J. A. Glenn, Sr., who, upon being served with the writ of replevin, had stopped payment on his check given for the purchase price at an auction sale, and who disclaimed ownership of the cattle as a witness at the trial. A plea of "not guilty" to the declaration in replevin had been entered on his behalf, but the proof disclosed affirmatively at the trial that he had paid nothing for the cattle and had repudiated his purchase of the same from the sales agency which conducted the auction sale, and that this agency had in turn stopped payment on its check to the proposed seller, Jimmy Harrison. The defendant in replevin, when testifying, was asked "You don't claim the cows now?" and answered "No, when I stopped payment on my check I released them    *    *    *."

The proof discloses that these same four cows and calves had been purchased at the same sales barn by the appellant Lee McNeer, as agent for the appellant J. B. Wiltshire, about two weeks prior to their sale to the appellee J. A. Glenn, Sr.; that they were purchased in the name of the said agent by a check given in his own name; and that they were hauled by the appellant J. B. Wiltshire to his barn at Greenwood and that Wiltshire had paid to his agent McNeer the money with which to take care of the check given by the latter for the purchase price; and that the cattle thereupon became the property of the appellant Wiltshire; that the only interest owned by the agent McNeer in the cattle was the right to share in any profits on a resale; that after the cattle had been placed by the appellant Wiltshire in his barn at Greenwood, they were hauled by the agent McNeer to a barn at Itta Bena which had been leased by a Mr. Hammond, and a part of the rent for which was being paid by McNeer and J. H. Knight, who seemed to have a similar arrangement as that between McNeer and Wiltshire in the purchase and sale of cattle; and that Mr. Knight thereafter took the cattle from the barn at Itta

Bena and sold them to a relative, Jimmy Harrison, for $600 in cash, and then credited that amount on an indebtedness of $525 which he claimed was owed to him by the appellant McNeer.

The lawsuit was tried in reality as a contest between the plaintiffs J. B. Wiltshire and Lee McNeer on the one hand and the said J. H. Knight on the other, although Mr. Knight was not actually a party to the suit since he had filed no claimant's affidavit for the property, as provided for by Section 2864, Code of 1942. The testimony of McNeer was to the effect that he had agreed to sell the four cows and calves to S. B. Hammond, lessee of the cattle barn at Itta Bena, and that Knight told him that he, Knight, could sell them to one Boling near Sunflower at a better price, and it was shown that Hammond and McNeer, being friends, the former agreed that if Boling would pay more than what Hammond had agreed to pay, it would be agreeable with the latter that they be sold to Boling, and that otherwise Hammond would still be willing to take them at the price which he had offered. It is undisputed that Hammond had offered $135 per pair (for each cow and calf) for these four cows and calves, as well as for another cow and calf which had been purchased by McNeer for Wiltshire at the auction sale. McNeer further stated that the agreement was that if Boling did not take the cattle at a better price than that offered by Hammond, they would be returned by Knight to the Hammond cattle barn, and that if they were purchased by Boling, then Knight was to bring the money to McNeer, the latter having testified that he was claiming that he and Knight were each claiming that the other was indebted to him, and they both agreed that they had not then had a settlement of their mutual dealings in the cattle business.

On the other hand, Knight admitted that "I told him I would send Mr. Boling over there to buy them, and if I wasn't there for him to let Boling have them." Knight was then asked "If you sold them to Boling what was

going to happen to the money?" and answered "He was going to settle with me." But the proof further discloses that Knight did not in fact contact Boling but returned to the Hammond cattle barn at Itta Bena the next morning when he claims to have bought the cattle himself from McNeer and agreed to credit him for all five cows and calves at $120 a pair, or the total sum of $600, on his indebtedness, whereas McNeer testified that he helped Knight to load the cattle and that the latter carried them away with the understanding that he was to sell them to Boling and bring him the money, or on failure to do so would return the cattle.

Thereafter the proof shows without dispute that two days later Knight sold the five cows and calves to his relative Jimmy Harrison, and later carried them to the sales barn again at Kilmichael, had them sold in the name of Jimmy Harrison, to whom the check for the purchase price was made payable when the defendant in replevin J. B. Glenn, Sr. purchased the four cows and calves involved in this suit at the price of $480, and they were thereupon hauled by Knight and delivered to the defendant Glenn; that for thirteen days prior to the second sale of these four cows and calves at the sales barn at Kilmichael, the appellants Wiltshire and McNeer had been looking for them and found them at the sales barn shortly before they were sold to the appellee Glenn; that the appellants protested to Knight against the cattle being run through the sale when the said Knight told Wiltshire that he had paid for the cattle, and when asked how he had paid for them, he said that he had paid cash, but later told the witness that "Him and Lee was trading just like me and Lee was and he said Lee had got behind with him and owed him money and I got a chance to get my hands on the cattle and he wanted to sell the cattle and give Lee credit for what those cattle brought;" that thereupon the appellants left the sale to institute the replevin suit, and that in the meantime they were sold to Glenn at the auction sale; that in the

affidavit for replevin the plaintiffs alleged that the four cows and calves in question were taken from their possession within thirty days prior thereto and that they were entitled to the first right of making bond for them; and that they made the bond as provided for by law and regained possession of the cattle.

The judgment appealed from contains the requirement that the plaintiffs and the sureties on their replevin bond "restore to the defendant" (J. A. Glenn, Sr.) the four cows and calves (describing them and fixing the value of each, as fixed in the affidavit in replevin, writ, sheriff's return and in the proof offered at the trial.)

We are of the opinion that the effect of this judgment is to entitle the defendant to recover the possession of the cattle from the plaintiffs for the benefit of either Knight or Harrison, without either of the latter having filed a claimant's affidavit therefor, and notwithstanding that the defendant Glenn expressly stated in his testimony that he stopped payment on his check to the sales agency where he purchased the cattle, as soon as the plaintiffs gave bond and took possession of them, and that he was not claiming the cattle. And we are of the further opinion that after having stopped payment on his check for the purchase price, and after having disclaimed ownership of the cattle thereafter, he was not entitled to recover possession of the same on the plaintiffs' replevin bond; that after having repudiated his purchase, which was acquiesced in by the sales agency when stopping payment of its check to Harrison, the defendant is not entitled to the cattle, and that the only way for either Knight or Harrison to have recovered the same as the result of the outcome of the lawsuit would have been to have filed a claimant's affidavit to be tried after the issue between the plaintiffs and defendant had been disposed of. Ettringham v. Handy, 60 Miss. 334. We think that under the proof in this case the plaintiffs

were entitled to a peremptory instruction as against the defendant J. A. Glenn, Sr., that they retain possession of the cattle which they had obtained by their replevin bond.

Reversed and judgment here for the appellants.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.